IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARÍA GARCÍA DÍAZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 22-1440 (MEL)

**OPINION AND ORDER**

I. **PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the court is Ms. María García Díaz's ("Plaintiff") appeal from the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 3. July 20, 2011, Plaintiff filed an application for Social Security benefits, alleging that she initially became unable to work due to disability on February 16, 2010 (the "onset date"). Tr. 137. Prior to the onset date, Plaintiff's past relevant work was as a vault teller, cash accounting clerk, bank teller, and head teller. Tr. 151. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Tr. 140. Plaintiff's disability claim was denied initially on April 19, 2012, and upon subsequent reconsideration on December 14, 2012. Tr. 137.

Thereafter, Plaintiff requested a hearing which was held on May 21, 2019, before an Administrative Law Judge (the "ALJ").[1] Tr. 137. On June 20, 2019, the ALJ issued a written

---

[1] Neither of the parties adequately explain the approximate six-year gap between Plaintiff's request for a hearing on February 13, 2013, and the hearing before the ALJ on May 21, 2019. Tr. 137. Although Plaintiff does describe the six-year delay as "abusive," her challenges to the ALJ's decision do not encompass the delay. ECF No. 23 at 2. However, to the extent that Plaintiff argues that her case should be remanded because of the delay, said argument is undeveloped and therefore waived. *Redondo–Borges v. Dept. of Housing and Urban Development*, 421 F.3d 1, 6 (1st Cir. 2005)

decision finding that Plaintiff was not disabled. Tr. 153. Thereafter, Plaintiff requested review of the ALJ's decision. *See* Tr. 1591–92. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1. Plaintiff sought judicial review on September 12, 2022. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 23, 27.

## II.   LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg*

---

("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

*v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC,

combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III. THE ALJ'S DECISION

In the ALJ's decision dated June 20, 2019, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2015, the date last insured. Tr. 140, 153. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of February 16, 2010, through the date last insured. Tr. 140. At step two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease; fibromyalgia; and affective disorders." Tr. 140. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 140. Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the [RFC] to perform less than the full range of light work as defined in 20 C[.]F[.]R[.] [§] 404.1567(b) with the following limitations[:] she can stand and/or walk for four hours during the workday. She can sit for six hours during the workday. She can occasionally push and pull with the right lower extremity[] and occasionally climb, balance, stop, kneel, crouch[,] and crawl. She is limited to simple work.

Tr. 143. At step four, the ALJ determined that during the relevant period, Plaintiff was not capable of performing her past relevant work as a vault teller, cash accounting clerk, bank teller, or head teller. Tr. 151. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert ("VE"). Tr. 152. The VE testified that a hypothetical individual with a similar RFC could perform the following representative occupations: address clerk, document preparer, and circuit board assembler. Tr. 152. Because

5

there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 152–53.

IV.  **LEGAL ANALYSIS**

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's mental impairments at step three, that the ALJ erred in formulating Plaintiff's mental and physical RFC, and that the ALJ erred by failing to develop the record. ECF No. 23 at 15, 23, 26. The Commissioner responds asserting that Plaintiff has failed to show prejudicial error at step three, that the ALJ's RFC assessment is supported by substantial evidence, and that the ALJ properly developed the record. ECF No. 27 at 4, 6.

**A. Plaintiff has failed to show prejudicial error by the ALJ at assessing Plaintiff's mental impairments at step three.**

Plaintiff claims that the ALJ did not properly evaluate her mental impairments at step three in accordance with 20 C.F.R. § 404.1520a. ECF No. 23 at 15–16, 23–25. At step two and three of the sequential analysis, a special technique is used to evaluate mental impairments. *See* 20 C.F.R. § 404.1520a(a).[2] This technique requires an ALJ to assess how much a plaintiff's mental impairments limit her in four broad functional areas, the "Paragraph B" criteria from Section 12:00E of the Appendix 1 listing of impairments. *Id.* at § 404.1520a(c)(2)–(3) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04B).

The ALJ will use the Paragraph B "four broad functional areas" and "rate the degree of [the plaintiff's] functional limitation . . ." to "[1] [u]nderstand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage

---

[2] Plaintiff does not challenge the ALJ's use of the special technique at step two and instead concedes that "[t]he ALJ complied at . . . step 2 of the sequential evaluation." ECF No. 23 at 24. Hence, the ALJ's analysis at step two will not be discussed further.

oneself." *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04B). In rating the degree of limitation in each of the four functional areas, the ALJ "will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). A mild limitation means that the plaintiff's functioning in the area is "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.00F2b. A plaintiff's mental impairment will be said to meet or medically equal a listed mental disorder if two of the Paragraph B criteria are classified as "marked" or if one of the Paragraph B criteria is classified as "extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04B; 20 C.F.R. § 404.1520a(d)(2).

Plaintiff first categorically argues that the ALJ failed to assess the Paragraph B criteria at step three and omitted his ratings in the written decision. ECF No. 23 at 24. Nevertheless, the ALJ did assess the Paragraph B criteria and explicitly discussed it in his decision. Tr. 142–43. Specifically, the ALJ found a moderate limitation in Plaintiff's ability to concentrate, persist, or maintain pace, and mild limitations in the remaining three criteria. Tr. 142–43. Inconsistent with her first argument, Plaintiff also challenges the limitations assessed by the ALJ, arguing that the ALJ's limitations are contrary to the opinions of the state agency consulting psychologists that found moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. ECF No. 23 at 16; Tr. 149, 1296–97, 1322. This assertion can be quickly disposed because even if the ALJ adopted the state agency consulting psychologists' moderate limitations, that would not change the outcome at step three since the listings require either an extreme limitation of one or marked limitation of two of the Paragraph B criteria. Hence, remand on this basis would "amount to no more than an 'empty exercise.'" *Senay v. Astrue*, No. C.A. 06-548S, 2009 WL 229953, at *9 (D.R.I. Jan. 30, 2009) (quoting *Dantran,*

7

*Inc. v. U.S. Dep't of Labor*, 171 F.3d 58, 73 (1st Cir.1999) ("[W]hen a reviewing court discovers a serious infirmity in agency decision[-]making, the ordinary course is to remand. But such a course is not essential if remand will amount to no more than an empty exercise.").

Plaintiff next takes issue with the ALJ's use of a function report that was "completed more than six years before the hearing" to support the ALJ's Paragraph B findings. ECF No. 23 at 15. The function report is dated October 21, 2011, putting it within the alleged disability period between February 2010 and December 2015. ECF No. 19-1 at 10; Tr. 140, 226 (function report translation without year), 1649 (function report original with year). Thus, the ALJ did not err in considering the function report. However, although the significant number of years that elapsed is a source of pause and concern, ultimately at step three, Plaintiff bears the burden of proving that her impairment or combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987) ("[t]he burden to demonstrate the existence of such a [listed] impairment rests with the [plaintiff]."). Plaintiff fails to cite evidence indicating that she warranted anything higher than a moderate limitation in any of the Paragraph B criteria. Accordingly, Plaintiff's challenges to the ALJ's use of the special technique at step three cannot prosper.

**B. Plaintiff has failed to show prejudicial error in the mental RFC assessment.**

Plaintiff makes two challenges to the ALJ's assessment of Plaintiff's mental RFC. Plaintiff argues that the ALJ erred in formulating Plaintiff's mental RFC by failing to (1) assess medical opinion evidence and (2) consider all the objective medical evidence. ECF No. 23 at 17–22. Regarding medical opinion evidence, Plaintiff takes issue with the ALJ's assessment of the medical opinions of the two state agency consulting psychologists, Mr. Hugo Román Rivera and Mr. Jesús Soto (collectively, the "consulting psychologists"), and two examining psychiatrists, Dr.

Rafael H. Miguez Balseiro ("Dr. Miguez") and Dr. Edelmiro Rodríguez ("Dr. Rodríguez") (collectively, the "examining psychiatrists"). ECF No. 17 at 23.

To the extent that Plaintiff argues that the ALJ should have assigned more weight to the consulting psychologists' opinions, that argument cannot flourish. Per the pertinent regulation, the ALJ was required to weigh the consulting psychologists' opinions "according to several factors, namely: (1) The length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; (2) the evidence which supports the opinion; (3) the consistency of the opinion with the record as a whole; (4) the medical source's specialty; and (5) other factors which tend to support or contradict the opinion. *Rosario Torres v. Comm'r of Soc. Sec.*, No. CV 18-1842, 2022 WL 4091889, at \*6 (D.P.R. Sept. 6, 2022) (citation omitted); 20 C.F.R. § 404.1527(c). "However, '[a]n ALJ need not expressly address each factor identified by the regulations but must provide "good reasons" for the weight assigned' to the medical source." *Rosario Torres*, 2022 WL 4091889, at \*6 (D.P.R. Sept. 6, 2022) (quoting *Sutton v. Berryhill*, 358 F. Supp. 3d 162, 168 (D. Mass. 2019)).

Here, the ALJ acknowledged that the consulting psychologists assigned Plaintiff specific functional limitations. Tr. 149. Particularly, in formulating the Plaintiff's mental RFC, the consulting psychologists opined that Plaintiff had moderate limitations in memory and understanding, concentration and persistence, social interaction, and adaptation. Tr. 1300–01, 1325–26. However, the ALJ's decision explains that he assigned little weight to the opinions of the consulting psychologists because they did not physically examine Plaintiff and did not review other objective medical evidence, which was inconsistent with their assigned functional limitations, that postdates their 2012 opinions. Tr. 149. Indeed, the ALJ explains in his decision that the evidence after 2012 (and up until the date of last insured) indicates that Plaintiff displayed

9

adequate insight, affect, judgment; displayed only mild attention disorder and thought process was logical, relevant, and coherent; and displayed normal mental status in memory, concentration, and attention. Tr. 146, 557, 768 (original at 2283), 842, 882 (original at 2406), 886 (original at 2410), 891 (original at 2414), 932.[3] Accordingly, the ALJ had good reason to weigh the opinions of the consulting psychologists as he did and said reason was supported by substantial evidence.[4]

Nevertheless, even though the ALJ assigned little weight to the consulting psychologists' opinions, a comparison of the consulting psychologists' ultimate mental RFC determination and the ALJ's RFC assessment shows that the ALJ still reasonably relied on their evaluations in forming Plaintiff's RFC. The consulting psychologists, despite concluding that Plaintiff had moderate limitations in understanding, memory, concentration, persistence, social interaction, and adaptation, concluded that Plaintiff could perform two-step simple commands, persist at tasks for two-hour intervals, and adjust to change. Tr. 1301, 1321, 1325–27. This is reasonably consistent with the ALJ's mental RFC finding that Plaintiff is limited to "simple work," and Plaintiff fails to make an argument or cite to evidence suggesting otherwise. Tr. 143. Accordingly, the ALJ properly evaluated the opinions of the consulting psychologists.

Next, Plaintiff asserts that the ALJ erroneously discarded the psychiatric evaluations of the examining psychiatrists on the basis that both evaluations "did not include a detailed and specific

---

[3] Some of the original documents in Spanish are also cited because the markings (i.e., the filled in boxes) which note Plaintiff's mental restrictions were not properly included in the certified English translations. Upon examining the English certified translations alongside the original Spanish documents, it is clear that a box that appears to be faded in the certified translation is in fact filled in on the original document. *Compare, e.g.*, Tr. 768, *with* Tr. 2283.

[4] Admittedly, the ALJ points to other exhibits (e.g., 2F, 23F, 25F, 99F, "hearing recording," and 3E) that do not necessarily support his reason for discounting the consulting psychologists' opinions, either because the evidence does not contradict or postdate the consulting psychologists' 2012 opinions. Regardless, even though that evidence does not support the ALJ's conclusion, it also does not discredit the fact that, as described above, ample record evidence supports the ALJ's decision. *Cf. Botelho v. Colvin*, 153 F. Supp. 3d 451, 462 (D. Mass. 2015) (affirming decision of the ALJ when she failed to explain her basis because upon review of the record, substantial evidence supported said decision) (citing *Shaw v. Sec'y of Health & Human Servs.*, No. 93-2173, 1994 WL 251000, at *2, *5 (1st Cir. June 9, 1994) ("[W]e see no reason to return this case for the purely formulaic purpose of having the ALJ write out what seems plain on a review of the record.")).

functional assessment." ECF No. 23 at 17 (citing Tr. 150). In other words, the ALJ deemed that the evaluations were not medical opinions and therefore did not warrant further discussion. The Commissioner agrees, arguing that the examining psychiatrists' evaluations were not medical opinions. ECF No. 27 at 7. Social Security regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including [a plaintiff's] symptoms, diagnosis and prognosis, what [a plaintiff] can still do despite impairment(s), and [a plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).[5]

Courts have given an expansive definition of what qualifies as a medical opinion under 20 C.F.R. § 404.1527(a)(1). *Rodin v. Comm'r of Soc. Sec.*, No. 1:21-CV-00900, 2023 WL 3293423, *14 (E.D. Cal. May 5, 2023) ("[C]ourts applying [20 C.F.R. § 404.1527(a)(1)] were more likely to find a medical record to be a "medical opinion" under the then more expansive definition."). The regulation could certainly be interpreted narrowly to mean that a medical opinion must include *all* the following: plaintiff's symptoms, diagnosis and prognosis, what a plaintiff can still do despite the impairment, and physical or mental restrictions. However, courts have instead held that "the plain text of the regulation indicates that a medical opinion reflects judgments about the nature and severity of the claimant's impairment(s) and *may* include symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Hougas v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08039, 2020 WL 13490919, at *2 (D. Ariz. Dec. 15, 2020) (internal alterations and quotations omitted) (citations omitted); *see also McClurkin v. Saul*, No. CV 19-00234, 2020 WL 292187, at *5 (D. Haw. Jan. 21, 2020) ("The

---

[5] For claims filed after March 27, 2017, the Code of Federal Regulations has now created a new standard for evaluating what constitutes a medical opinion. *See* 20 C.F.R. § 404.1520c. However, because Plaintiff filed his claim in 2011, 20 C.F.R. § 404.1527 still applies. Tr. 137.

11

Commissioner's interpretation unduly limits what constitutes a medical opinion and misconstrues the plain text of the regulation. The regulation clearly states that medical opinions may *include* symptoms, diagnosis and prognosis, what claimant can still do despite impairment(s), and claimant's physical or mental restrictions. . . .  Put differently, such statements of what [the c]laimant can still do despite impairment(s) are sufficient to amount to medical opinions but not necessary." (internal alterations omitted) (citation omitted)). Thus, a medical statement qualifies as a medical opinion under Section 404.1527(a)(1) when it discusses at least one of the following: plaintiff's symptoms, diagnosis and prognosis, what a plaintiff can still do despite the impairment, and physical or mental restrictions.[6]

Both evaluations should be considered medical opinions because they contain statements from medical sources that detail Plaintiff's mental restrictions. Dr. Miguez's February 2012 evaluation states, among other things, that Plaintiff's memory (remote and recent) is "conserved," Plaintiff can maintain attention and is well-oriented in person, place and time, and Plaintiff's judgment is slow in reacting to daily living situations. Tr. 456–57. Additionally, Dr. Rodríguez's December 2012 evaluation states, among other things, that Plaintiff's immediate and short-term memory were poor, attention was fair, concentration was poor, and judgment was fair. Tr. 2065–66. Moreover, the examining psychiatrists both briefly explain the bases for their opinions through either their own observations or mental exams conducted on Plaintiff. Tr. 456, 2065. Although the ALJ erred by failing to discuss nearly all the mental restrictions listed above, this error was harmless because the ALJ's decision was supported by substantial evidence which postdates the examining psychiatrists' reports and, contrary to said reports, indicates normal mental conditions.

---

[6] Medical opinions may come from both a plaintiff's treating source as well as from "[s]tate agency medical and psychological consultants and other program physicians and psychologists[.]" 20 C.F.R. § 404.1527(a)(2); SSR 96-6p.

*Pérez Torres v. Sec'y of Health and Human Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989)) ("Accordingly, if the likely outcome on remand in this case is clear and the same as that reached in the decision under review, making the administrative law judge's admitted error essentially harmless, the court may uphold the denial of the plaintiff's claim."); *see also* Tr. 146, 150 (ALJ's discussion of both psychiatric reports).

As discussed, the only mental restrictions that the examining psychiatrists opined on in 2012 that would benefit Plaintiff are the opinions that her immediate and short-term memory were poor, judgment was slow in reacting to daily living situations, and concentration was poor. Tr. 456–57. However, even if the ALJ explicitly considered these opinions in his decision, it would make no difference because just like the opinions of the consulting psychologists, the opinions of the examining psychiatrists predate other medical evidence asserting that Plaintiff displayed normal mental status. Specifically, progress notes from 2013 through 2015 assert that Plaintiff displayed adequate insight, affect, judgment; displayed only mild attention disorder and thought process was logical, relevant, and coherent; and displayed normal mental status in memory and attention. Tr. 146, 557, 768, 842, 882, 886, 891, 932. Therefore, the opinions of the examining psychiatrists can be discounted for the same justified reasons the ALJ discounted the opinions of the consulting psychologists, that is, because the evidence shows that Plaintiff exhibited normal mental status after 2012 (and up until the date of last insured). Moreover, Plaintiff fails to explain how these restrictions would warrant a more restrictive mental RFC than simple work. Accordingly, the ALJ's failure to explicitly discuss the opinions of the examining psychiatrists does not warrant remand.

Plaintiff also contends that the ALJ erred in assessing the mental RFC by failing to consider all the objective medical evidence. ECF No. 23 at 18. Specifically, Plaintiff claims that

the ALJ failed to discuss three partial hospitalizations due to depressive symptoms, one in 2013 for six days, one in April 2015 for one day, and one in September 2015 for six days;[7] her medication history; and other Attending Physician Statements ("APS") during the relevant period.[8] ECF No. 23 at 19.

However, "[t]he ALJ was not required to discuss every piece of evidence that favored" Plaintiff, and his decision must be affirmed so long as it is supported by substantial evidence. *Santiago v. Sec'y of Health & Hum. Servs.*, 46 F.3d 1114, at *4 (1st Cir. 1995); *Rodríguez Pagán*, 819 F.2d at 3. Here, the ALJ noted that from July 2011 through December 2015—all within the relevant period—"most of [Plaintiff's] mental status examinations [show that] she was coherent, oriented, relevant, cooperative[,] and logical. She displayed adequate insight, affect[,] and jud[]ment." Tr. 146. Plaintiff makes no challenge to this conclusion or the evidence supporting it. Additionally, as explained above, the ALJ relied on the opinions of the consulting psychologists—the only mental RFC opinions in the record—to form Plaintiff's mental RFC. Thus, the ALJ's conclusion was supported by substantial evidence. At best, Plaintiff's argument invites the court to reweigh the evidence, something outside of the court's purview. *Candelaria v. Comm'r of Soc. Sec.*, No. CV 19-1303, 2021 WL 9098265, *2 (D.P.R. Jan. 21, 2021) ("[W]eighing the evidence is the ALJ's prerogative."). Hence, Plaintiff has failed to prove that remand is warranted based on the ALJ's assessment of Plaintiff's mental RFC.

---

[7] Contrary to Plaintiff's assertion, the ALJ did discuss the six-day hospitalization that occurred in 2013. Tr. 146. He noted that Plaintiff was hospitalized in 2013 for major depression; however, after treatment she increased her level of attention, concentration, communication, and was capable of socializing, and tolerating group activities. Tr. 146, 1209. Moreover, the ALJ emphasized that medical evidence in 2014 suggested that Plaintiff's mental status was improving, that is, she was alert and oriented and that she denied depression, anxiety, or emotional problems. Tr. 146, 718, 1084. Likewise, the ALJ also explicitly addressed Plaintiff's six-day hospitalization that occurred in September 2015. Tr. 146. The ALJ noted that after the hospitalization, Plaintiff displayed good mood, stable affect, no delusions or suicidal ideas, and exhibited positivism. Tr. 146, 925.

[8] Plaintiff points to medical evidence outside the relevant period (i.e., between her alleged onset date and date of last insured). However, Plaintiff fails to explain why said evidence should be considered. Therefore, it was excluded from the analysis.

**C. Plaintiff has failed to show that the ALJ erred at assessing Plaintiff's physical RFC.**

Plaintiff claims that the ALJ erred in assessing her physical RFC by not considering two back surgeries she had after the date of last insured. ECF No. 23 at 26. "Medical evidence generated after a [plaintiff's] insured status expires may be considered for what light (if any) it sheds on the question whether [plaintiff's] impairment reached disabling severity before h[er] insured status expired." *Padilla Perez v. Sec'y of Health & Hum. Servs.*, 985 F.2d 552, at *5 (1st Cir. 1993). Plaintiff points to evidence explaining that she was referred for back surgery on October 6, 2015, a date before the December 31, 2015, date of last insured. Tr. 140, 144, 937. The October 6, 2015, referral states that Plaintiff would be admitted to the hospital on January 21, 2016, for a surgical procedure the following day. Tr. 937. Additionally, Plaintiff underwent a second back surgery in July 2018. Tr. 1181, 1196. Plaintiff also points to a medical note dated May 8, 2018, from Dr. Yamil Rivera ("Dr. Rivera"), the physician who Plaintiff claims conducted both of her back surgeries, where Dr. Rivera states that because of Plaintiff's back impediment, she has "[p]ain when sitting and standing." Tr. 1174.

Here, the ALJ explicitly acknowledged Plaintiff's post-2015 surgeries in his written decision and noted that they fell out of the period of consideration. Tr. 144. While Plaintiff emphasizes that she underwent a second back surgery in July 2018, she fails to explain how this event has any bearing on her disability inquiry within the relevant period. Moreover, the July 2018 surgery is more than two years past Plaintiff's December 2015 date of last insured, making it too far away to be considered. On the other hand, the January 2016 back surgery is less than a month after the date of last insured, making it fair to consider in the disability inquiry. Even so, Plaintiff fails to cite to any evidence indicating that her back condition, even with the 2016 back surgery,

15

would have made her incapable of working for a continuous period of twelve months and thus disabled for purposes of social security. Dr. Rivera's May 2018 statement regarding Plaintiff's back pain is also not probative. While Dr. Rivera states that Plaintiff has "[c]hronic lumbar pain with radiculopathy," he fails to explain the severity of said pain, such as whether it was mild or severe. Tr. 1174. Moreover, based on the evidence presented, it is speculative to say that Dr. Rivera's May 2018 statements regarding Plaintiff's back pain are as equally applicable to Plaintiff's back condition during the period of consideration. Therefore, Plaintiff's attempt to show error by pointing to evidence of her post-2015 surgeries cannot stand.

### D. Plaintiff does not show prejudicial error regarding whether the ALJ failed to develop the record.

Plaintiff asserts four arguments regarding the ALJ's failure to develop the record: (1) that the ALJ failed in fully developing the record because he failed to pose any question to Plaintiff concerning any medical condition, (2) he pressed Plaintiff's attorney because they were running out of time, (3) he concluded that there was a residual hands limitations in the RFC without the assistance of a medical expert, and (4) the ALJ's physical RFC assessment was done without the assistance of a medical expert. ECF No. 23 at 27. Plaintiff is correct in that the ALJ did not explicitly ask her a question regarding her medical conditions because he kept his questions limited to her previous job experience. Tr. 173–180. However, Plaintiff fails to show how she was prejudiced by this omission, especially when Plaintiff's counsel remedied the ALJ's omission by asking Plaintiff questions regarding her conditions, such as her back problems and fibromyalgia. Tr. 184–185. This testimony was not ignored by the ALJ; to the contrary, it was explicitly discussed in the ALJ's written decision. *E.g.*, Tr. 144 ("During the period under consideration,

[Plaintiff] recounted experiencing problems in her cervical and lumbar spine . . . . She also alleged fibromyalgia."). Consequently, this assertion is untenable.

Nor can Plaintiff's contention regarding her attorney being rushed through the hearing succeed. Plaintiff fails to explain how more testimony would have changed the outcome of the decision. Even so, the record reasonable shows that Plaintiff's counsel had enough time to ask all her questions:

> ALJ: Counsel, we are running out of time here, I am going to ask you to please focus on the most important points.
>
> [Plaintiff's Counsel]: Yes, I am almost done, your honor.
>
> ALJ: Thank you.
> . . . .
> Q [Plaintiff's Counsel:] *Lastly*, do you need assistance for your personal hygiene, getting dressed or bathing?
>
> A [Plaintiff:] At times, yes.
> . . . .
> Q *I have no further questions*, your honor.

Tr. 190–91 (emphasis added). Thus, while the transcript indicates that the ALJ directed the attorney to zero in with her line of questioning, it does not conclusively show that Plaintiff's counsel was pressed for time in such a way that counsel was unable to fully question Plaintiff as she desired.

Plaintiff also claims that the ALJ "invented residual hands limitations in the RFC without the assistance of a medical expert." ECF No. 23 at 27. This contention is unfounded considering that the ALJ did not assign a hand specific limitation in Plaintiff's RFC. *See* Tr. 143. Regardless, even if the ALJ did assign a hand limitation to Plaintiff, said limitation would result in a more restrictive RFC and ultimately benefit Plaintiff. *Lozada-Lebron v. Kijakazi*, No. CV 21-1511, 2022 WL 17335668, at *6 (D.P.R. Nov. 29, 2022) ("[T]he Court must note that the ALJ gave Plaintiff a

more restrictive RFC at all times and mentioned that it was more beneficial to Plaintiff. . . . Thus, the Court finds no error in the ALJ's RFC determination.").

Finally, Plaintiff's contention that her physical RFC was assessed without the input of a physician is unfounded because the ALJ relied on the physical RFC opinion, which was made at the reconsideration level, of state agency consultant Dr. Cristina Ortiz. Tr. 149. To the extent that Plaintiff argues that the ALJ erred in assigning little weight to the other state agency consultant Dr. Carmen Ortiz at the initial consideration level, that argument lacks merit. Indeed, the ALJ's decision to rely more on Dr. Cristina Ortiz's physical RFC, instead of Dr. Carmen Ortiz's RFC, benefitted Plaintiff because the opinion that the ALJ favored was more restrictive. *Compare* tr. 1323–25 (stating that Plaintiff can stand and/or walk for four hours), *with* Tr. 1298–99 (stating that Plaintiff can stand and/or walk for six hours); *see also Meléndez Alcaraz v. Comm'r of Soc. Sec.*, No. CV 22-1048, 2024 WL 322354, at *3 (D.P.R. Jan. 29, 2024) ("While the ALJ's assigned manipulative limitation was not identical to that of Dr. Queipo, it was a more restrictive determination that ultimately benefited Plaintiff, which is not error entitled to remand." (citation omitted)). In sum, Plaintiff has failed to show that the ALJ failed to develop the record.

## V.   CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence and contained no prejudicial legal error. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of May, 2024.

s/Marcos E. López<br>
U.S. Magistrate Judge